1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol Ann Schomburg, ) | No. CV 11-00125-PHX-NVW |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Carol Ann Schomburg seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     Background**

   **A.     Factual Background**

Schomburg was born on February 22, 1950. She was 47 years old as of December 1, 1997, the alleged disability onset date. She previously worked as a receptionist and a collections agent. Schomburg testified that she stopped working in 1995 because she had two young daughters and was extremely tired. In 2000, 2001, and 2006, she occasionally

worked part-time as a church receptionist, but her work activity was below the level of substantial gainful activity as defined in the Social Security regulations.

In January 1998, Schomburg was diagnosed with infiltrating lobular carcinoma of the left breast and infiltrating ductal carcinoma of the right breast. In February 1998, she underwent bilateral mastectomies. In March 1998, imaging of her thoracic spine revealed increased uptake in the spine that was interpreted as more consistent with focal arthritis rather than metastasis. Subsequently, Schomburg received a course of chemotherapy, followed by treatment with tamoxifen. In June 1998, she reported having a little more nausea and fatigue following her fourth course of chemotherapy, but no major side effects. In July and August 1998, Schomburg continued to report fatigue. In October 1998, she reported that she had no symptoms that would suggest metastatic disease.

In March and June 1999, Dr. Julia Antoine examined Schomburg and found no evidence of recurrent breast cancer. Dr. Antoine noted that Schomburg "reports no symptoms of any kind to suggest metastatic disease." In October 1999, Dr. Antoine examined Schomburg and again found no evidence of recurrent breast cancer. She noted again that Schomburg reported "no symptoms to suggest metastatic disease." In March 2000, upon examining Schomburg, Dr. Antoine noted, "She has developed no symptomatology of any kind to suggest metastatic disease." Dr. Antoine also noted there was "no evidence of relapse." In April 2001, Dr. Antoine examined Schomburg and noted there was no evidence of recurrent disease. In December 2001, Schomburg's left breast implant was removed due to infection.

An x-ray of Schomburg's hip on May 24, 2002, showed "osteolytic metastatic disease to the right femoral head and right femoral neck." A bone scan on May 31, 2002, showed "abnormal uptake in the entire right femoral head, as well as the level of the T4 vertebra." In June 2002, Schomburg reported pain in her right hip and midthoracic spine, and Dr. Amol Rakkar concluded that her breast cancer had recurred with skeletal metastases. In July 2002, Schomburg told Dr. Rakkar that she had just returned from vacation and she was able to do most of the activities at Disneyland, but her back pain

was bothering her a little bit more than before. In 2004, a metastatic mass was found in her abdomen, and Schomburg underwent chemotherapy. In January 2005, the abdominal tumor had reduced in size by 50%, but was enlarged again in June 2005. In October 2005, a scan was normal with no evidence of residual or recurrent disease. In 2006, Schomburg's scans were normal, and she continued chemotherapy. In February 2009, Dr. Rakkar observed no further progression of the disease.

### B. Procedural History

On April 19, 2006, Schomburg protectively applied for disability insurance benefits and supplemental security income, alleging disability beginning December 1, 1997. Both applications were denied on initial review and again on reconsideration, after which Schomburg requested that her claim be heard by an ALJ. On June 1, 2009, an administrative hearing was held at which Schomburg testified and was represented by counsel. Sandra Richter, a vocational expert, also appeared and testified at the administrative hearing.

On September 18, 2009, the ALJ issued his decision that Schomburg was not disabled within the meaning of the Social Security Act. He found that Schomburg retained "the residual functional capacity to perform the full range of her past sedentary, semi-skilled work as a receptionist (SVP 4)."

On November 20, 2009, the Appeals Council denied Schomburg's request for review of the ALJ's unfavorable decision, making that decision the final decision of the Commissioner. On January 19, 2011, Schomburg sought judicial review of the decision pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a

preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

If the ALJ's decision is not supported by substantial evidence or suffers from legal error, the court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Remand for further proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Id.* (citing *Smolen*, 80 F.3d at 1292).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**III.     Five-Step Sequential Evaluation Process**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the ALJ does not continue to the next step. The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

- 4 -

1 | At the first step, the ALJ determines whether the claimant is engaging in
2 | substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not
3 | disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the
4 | claimant has a "severe" medically determinable physical or mental impairment.
5 | § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step
6 | three, the ALJ considers whether the claimant's impairment or combination of
7 | impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.
8 | Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled.
9 | *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's
10 | residual functional capacity and determines whether the claimant is still capable of
11 | performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled
12 | and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he
13 | determines whether the claimant can perform any other work based on the claimant's
14 | residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v).
15 | If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## IV. Analysis

The ALJ found that Schomburg last met the insured status requirements of the Social Security Act on June 30, 1999, when she was age 49, and although she continued to work after her alleged disability onset date, her reported earnings were not at the level of substantial gainful activity. At step two, the ALJ found that, through the date she was last insured, Schomburg had the following impairments, which are severe when they are considered in combination: a history of breast cancer status-post bilateral mastectomies, which were performed on February 4, 1998, with six months of chemotherapy, which ended in August 1998, and radiation treatment thereafter. At step three, the ALJ found that through the date she was last insured, Schomburg did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

1    Schomburg does not raise any issues related to the ALJ's determinations at the
2 first three steps of the five-step sequential evaluation process. She challenges the ALJ's
3 weighing of medical source evidence and rejection of Schomburg's symptom testimony
4 in his determination of her residual functional capacity at step four.

**A.     Weighing Medical Source Evidence**

**1.     Legal Standard**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given *controlling* weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. The ALJ Erred in Rejecting Treating Physician Dr. Amol Rakkar's Opinion that Schomburg's Bone Cancer Was Related to Her Breast Cancer, but the Error Is Not Relevant to the Issues on Appeal.

Schomburg contends the ALJ erred by rejecting treating oncologist Dr. Rakkar's determination that "the claimant's 'skeletal metastases' were definitively related to the initial diagnosis of the claimant's bilateral breast cancer on December 30, 1997." Although the ALJ's rejection was stated within his step three determination of whether Schomburg's impairment satisfied the specific criteria of a Listing in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404, it appears that Schomburg challenges the rejection as it relates to his step four determination of residual functional capacity.

It is undisputed that Schomburg had breast cancer, surgery, and post-surgical treatment in 1998, bone cancer in a femur and her thoracic spine in 2002, and cancer in a lymph node in 2004. The opinion rejected by the ALJ is whether the 2002 or 2004 cancers were a recurrence of her 1998 breast cancer:

> While Dr. Rakkar diagnosed the claimant as having metastatic breast cancer with "skeletal metastases," his clinical record reflects notations of speculative findings "consistent with" and "highly suggestive of" cancer, but no conclusive objective evidence or credible medical opinion related to Dr. Rakkar's [*sic.*] cancer prior to at least March 15, 2005 to support his conclusion that the claimant's "skeletal metastases" were definitively related to the initial diagnosis of the claimant's bilateral breast cancer on December 30, 1997.
>
> Dr. Rakkar did not limit the claimant's ability to the extent that she was unable to perform her past relevant work before the date she was last insured, June 30, 1999. As the claimant's treating physician for a number of years, Dr. Rakkar was well-qualified to limit the claimant's residual functional capacity, but he did not do so. The absence of such limitations diminishes the claimant's credibility. The undersigned assigns controlling evidentiary weight to Dr. Rakkar's clinical notes as regards his conclusions and observations about the claimant's post-operative breast cancer, but rejects Dr. Rakkar's determination that the claimant's "skeletal metastases" were related to her previous breast cancer.
>
> Accordingly, the claimant has not show[n] that the medical evidence of record established the existence of a disabling impairment which satisfied the specific criteria of a Listing . . . prior to June 30, 1999.

Schomburg does not argue here that the record established the existence of a disabling impairment that satisfies a Listing at step three, but rather that by substituting his own lay

- 8 -

opinion for that of Dr. Rakkar, the ALJ adopted a residual functional capacity without basis in the record. However, although the ALJ's rejection of Dr. Rakkar's diagnosis of "metastatic breast cancer with 'skeletal metastases,'" *i.e.*, "recurrent breast cancer," may have been relevant to whether Schomburg's condition satisfied a Listing at step three, it is not relevant to the step four determination of Schomburg's residual functional capacity as of the date she was last insured.

Although the ALJ's rejection of Dr. Rakkar's conclusion does not affect the step four determination of Schomburg's residual functional capacity as of the date she was last insured and is therefore harmless error, it is error nonetheless. Dr. Rakkar's diagnosis that Schomburg's bone cancer first detected in 2002 was a recurrence of her breast cancer was not contradicted by any other medical sources. Thus, the ALJ was required to state clear and convincing reasons for rejecting it, and he did not. Dr. Rakkar's use of terms such as "consistent with" and "highly suggestive of" does not make his opinion speculative. The record plainly shows that medical providers who subsequently treated Schomburg accepted and relied on Dr. Rakkar's diagnosis as credible, even if not proven conclusively by objective medical evidence.

But, at step four, the ALJ was required to determine what residual functional capacity Schomburg had on or before June 30, 1999. If, as Dr. Antoine's uncontradicted treatment notes state, Schomburg did not experience any symptoms of cancer after surgery and treatment in 1998 and on or before June 30, 1999, her residual functional capacity was not limited during the relevant period. Thus, whether at some point after June 30, 1999, she developed bone cancer related to her earlier breast cancer does not affect her entitlement to benefits as of her last date insured.

    **B.**    **Subjective Symptom Testimony**

        **1.**    **Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could

reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Schomburg's symptoms are less severe than she claims. *Id.* at 592.

To be found credible regarding subjective pain or fatigue, a claimant is not required to: (1) produce objective medical evidence of the pain or fatigue itself, or the severity thereof; (2) produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom; or (3) show that her impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

### 2. The ALJ Did Not Err by Finding Schomburg's Subjective Symptom Testimony Not Credible.

Schomburg contends that "the ALJ erred by rejecting Schomburg's symptom testimony in the absence of clear and convincing reasons for doing so." The ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms and the side-effects of the medication prescribed for her condition are not fully credible to the extent that they are inconsistent with the residual functional capacity assessment determined by the undersigned.
>
> The claimant had the residual functional capacity to perform the full range of her past work as a receptionist which the Dictionary of Occupational Titles classifies as sedentary, semi-skilled work (SVP 4).

The ALJ gave specific, clear, and convincing reasons for rejecting Schomburg's testimony about the severity of her symptoms:

> The claimant alleges that she has been unable to work since December 1, 1997 due to her impairments, limitations, symptoms, and the side-effects of her medication, but the medical evidence does not support her allegations.
>
> The claimant also testified that she stopped working in December 1997 due to extreme fatigue, but later testified that she has continued to work, "on an

as-needed basis" from 2000 to the present time as a receptionist in her church. The evidence of record also shows the claimant was first diagnosed with breast cancer on December 30, 1997 and was admitted to the Boswell Memorial Hospital on February 4, 1998, a radical bilateral mastectomy was performed, and the claimant was released from the hospital on February 6, 1998 (Exhibit 3F/127-129).

As discussed above, subsequent clinical records and tests reflect no evidence of cancer which met or equaled the criteria identified in the Listing after the bilateral mastectomy, chemotherapy, and radiation therapy until well after the claimant's date last insured. Additionally, the claimant has not provided a persuasive reason why she was unable to perform her past relevant work prior to June 30, 1999.

The ALJ's reasons for rejecting Schomburg's symptom testimony are supported by the transcript of her hearing testimony. She testified that she quit working in 1995, more than two years before she was diagnosed with breast cancer. When the ALJ asked her why she was unable to work in 1997, she testified:

> I had stopped working. I had my two daughters and I was extremely tired. I wasn't feeling good. I didn't know why. I went to doctors and they didn't know why and it was just – I just didn't know why until finally they came up with breast cancer.

When the ALJ asked Schomburg why she had stopped working in an office answering telephones, she testified: "Well, I didn't feel – I was feeling tired and overwhelmed, exhausted. I was – it was too much." Upon further questioning about why she had stopped working in 1995, she testified that she did not feel as though she could continue the receptionist job with two young daughters:

> Q. And you said that you stopped that job because you weren't feeling well?
>
> A. Yes, I had the two daughters and I was – they were pretty little at the time. And they were – it had just took out [*sic*] my time and I wasn't really feeling like I could do both. My husband didn't like it.
>
> Q. Didn't like that you stopped?
>
> A. No, he didn't but I just felt I needed to take a break at the time.

Schomburg also testified that in 1999 and 2000 she had nausea and diarrhea caused by tamoxifen, which she discontinued in 2001, but she continued to have similar side effects in 2009. She further testified that in 2001 and 2002 she worked 2 or 3 days a

- 11 -

week as a receptionist and in 2006 she worked occasionally as a receptionist for four hours at a time when needed.

Therefore, the ALJ did not err by finding Schomburg's statements concerning the intensity, persistence and limiting effects of the symptoms of her severe impairments not fully credible to the extent that she claims to have been unable to perform the full range of her past work as a sedentary, semi-skilled receptionist as of her last insured date.

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Carol Ann Schomburg disability benefits.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 24th day of October, 2011.

_____
Neil V. Wake
United States District Judge